UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Mashama Hill ,

                  Plaintiff,

v.

Paul Curcione et al.,

                  Defendants.

**Hon. Hugh B. Scott**

07CV357

**Report
&
Recommendation**

Before the Court are the following motions: plaintiff's motion for a preliminary injunction (Docket No. 5) and defendants Aikin's and Hohensee's motion to dismiss (Docket No. 9).

**Background**

The plaintiff, Mashama Hill ("Hill") brings this action under 42 U.S.C. § 1983 claiming that he was assaulted by Corrections Officers Paul Curcione ("Curcione"), Jeffrey Shawver ("Shawver")[1]; and Tammy Williams ("Williams") on March 28, 2007. The plaintiff also names as defendants Christopher Aikin ("Aikin")[2] and Dr. James Honhensee based upon a claim that he was denied medical treatment.

---

[1] The plaintiff sued Shawver as "Jeffrey Chawer").

[2] The plaintiff sued Aikin as "Chris Atkins").

1

More specifically, the plaintiff contends that he was incarcerated at the Niagara County Jail on March 28, 2007. According to Hill, on that date he requested to be moved from the "Pod" in which he was housed because he was directed to perform two particular cleaning details for three consecutive days. (Docket No. 1, Statement of Facts, at ¶ 1). At approximately 11:15 p.m. that evening the "Pod" in which the plaintiff was housed was ordered to "lock in" (Docket No. 1, Statement of Facts, at ¶ 2). Hill asserts that five minutes later Curcione and Shawver approached his cell, ordered him to put on some footwear and prepare to be moved. After doing so, Hill claims that Curcione and Shawver entered his cell and handcuffed him. Hill asserts that Curcione then proceeded to strike him "in the upper torso and head area several times. (Docket No. 1, Statement of Facts, at ¶¶ 3-5). The plaintiff further contends that Curcione and Shawver then took him into the sallyport and slammed him against the wall several times. (Docket No. 1, Statement of Facts, at ¶ 6-7). At this point, Hill states that he began to resist "to prevent officers from tossing him to the floor face first." (Docket No. 1, Statement of Facts, at ¶ 8). While on the floor, Hill claims that Curcione and Shawver "had begun to tighten the handcuffs and bend his wrist solely as a means to cause injury." (Docket No. 1, Statement of Facts, at ¶ 8).[3] Also while on the floor, Hill maintains that Williams arrived and that Curcione told Williams that Hill "had been resistant causing the need to use force." (Docket No. 1, Statement of Facts, at ¶ 10). The plaintiff asserts that he insisted that the handcuffs were too tight. He claims that because he would not stop complaining, the officers put "a facemask" on

---

[3] The paragraphs of a complaint are typically numbered at the beginning of each paragraph. In the complaint in this case, the plaintiff placed paragraph numbers at the end of each paragraph. He numbered two consecutive paragraphs "para. 8". The above quote is included in the second of those two paragraphs.

him "causing his breathing to stop." (Docket No. 1, Statement of Facts, at ¶ 12). He was brought to isolation. (Docket No. 1, Statement of Facts at ¶ 13).

Hill asserts that he was seen by an unidentified nurse on March 29, 2007 and by an unidentified Physician's Assistant ("PA") on March 30, 2007. (Docket No. 1, Statement of Facts at ¶15). He continued to complain about pain due to the manner in which he was handcuffed. He was sent for an x-ray which revealed a fracture in one of the bones in his wrist. He was seen outside of the facility by Dr. Robert Bauer who placed a cast on Hill's wrist on April 9, 2007. (Docket No. 1, Statement of Facts, at ¶¶ 16-17). It does not appear that Dr. Bauer ordered any medications or follow-up treatment.

At some point, the plaintiff was prescribed Motrin for his continued complaints of pain relating to his wrist injury. On April 19, 2007, Hill asserts that Aikin advised him that a report was filed by Officer Tim Blackwell stating that Hill had been observed "doing pull-ups & push-ups" during recreation." According to his complaint, Hill did not deny that report but stated to Aikin that the allegations "were not exact". (Docket No. 1, Statement of Facts at ¶ 19). Hill contends that the report was filed by Blackwell "to impede his endeavors in filing a lawsuit against his fellow colleagues ... ." (Docket No. 1, Statement of Facts, at ¶ 19). The documents attached to the plaintiff's complaint reflect that on April 19, 2007, approximately three weeks after the incident in which his wrist was injured, Hill was seen and video taped "doing 5 sets of 7 pull-ups on the frame of the basketball backboard and 6 sets of bench presses using the wood picnic tables." (See May 3, 2007 Grievance Form– Part II at page 16 of Docket No. 1).

The complaint contains almost no reference to the medical treatment provided by Aikin and Hohensee. At ¶ 20, Hill alleges that "Motrin is not sufficient pain medication." At ¶ 21, the

plaintiff asserts that because he was a parole violator he was to be out of the custody of the County of Niagara in approximately three weeks (from the date of the complaint) and that both Akins and Hohensee "verbally expressed" to him that the New York State Department of Correctional Services ("DOCS") should "deal with plaintiff's issues." (Docket No. 1, Statement of Facts, at ¶21). No other allegations in the complaint refer specifically to Aikin or Hohensee.

## Discussion

The plaintiff seeks a preliminary injunction enjoining the defendants from denying him "sufficient pain medication and a nerve conduction study." (Docket No. 5 at page 1). Defendants Aikin and Hohensee move to dismiss the complaint to the extent it alleges claims relating to the denial of medial treatment by them.

The request for a preliminary injunction should be denied and the motion to dismiss the complaint as against Aikin and Hohensee should be granted. To establish an Eighth Amendment violation based on deliberate indifference to a prisoner's medical needs, a plaintiff must prove the following: first, that the alleged deprivation was objectively serious enough to present the possibility of death, degeneration, or extreme pain; and second, that the charged official acted with a sufficiently culpable state of mind. Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir.1998). "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (internal quotation marks and citation omitted). Moreover, a §1983 plaintiff must establish the defendant's personal involvement in the

alleged deprivation; "*respondeat superior* cannot form the basis for a §1983 claim." Id.

Also, it is well-established that a prisoner is not entitled to receive the medical treatment of his choice.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment or a different doctor does not give rise to an Eighth Amendment violation. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir.1986) (The essential test is one of medical necessity and not one simply of desirability.)  Even medical malpractice may not constitute an Eighth Amendment violation.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In order to be liable, an official must "know ... of and disregard ... an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, the complaint in this matter acknowledges that the plaintiff received medical treatment relating to his wrist injury, including a prescription of Motrin for pain relief. Although the plaintiff alleges that he should have been given different pain medication and be sent for a nerve conduction study, the plaintiff does not assert any medical basis for these claims. At best, the plaintiff disagrees with the various medical professionals as to the nature and treatment of the medical services he received.   More importantly, the plaintiff fails to assert any allegations or basis to find that Aikin or Hohensee acted with a sufficiently culpable state of mind to find that they knowingly acted to disregard an excessive risk to Hill's health.  Therefore, the motion to dismiss the complaint as to Aikin and Hohenesee should be granted.

Similarly, the motion for injunctive relief should also be denied. To obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a

balance of the hardships tipping decidedly in its favor. Lusk v. Village of Cold Spring, 2007 WL 259873, *4 (2d. Cir. 2007) citing Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 348-49 (2d Cir.2003). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n. 12 (1987). A preliminary injunction is an extraordinary remedy which should not be granted lightly. Hanson Trust PLC v. MLSCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986) (a preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies). A party moving for a preliminary injunction has the burden of demonstrating that he or she will suffer irreparable harm if a preliminary injunction is not granted. Int'l. Brotherhood of Teamsters v. Local Union No. 10, 19 F.3d 786 (2d Cir. 1994). To demonstrate irreparable harm, a plaintiff must show that an injury is not remote or speculative, but actual and imminent, and that monetary damages will not suffice as a remedy. Forest City Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999). Where, as here, a moving party challenges governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party cannot resort to the "fair ground for litigation" standard, but is required to demonstrate irreparable harm and a likelihood of success on the merits. Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995). This heightened standard reflects judicial deference towards legislation and regulations developed through presumptively reasoned democratic process. Id. An even stricter standard must be used where the plaintiff seeks affirmative type relief, otherwise known as a mandatory injunction, or where the injunction sought "will provide the [inmate] with substantially all the relief sought, and that relief cannot be

undone even if the defendant prevails at a trial on the merits." Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). In such cases, the plaintiff must make a "clear" or "substantial" showing of a likelihood of success. Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988); Costello v. McEnery, 767 F. Supp. 72, 75 (S.D.N.Y.), aff'd, 948 F.2d 1278 (2d Cir. 1991), cert. denied, 504 U.S. 980 (1992). 18 U.S.C. §3626, which dictates the appropriate remedies for prison conditions, states: "in any civil action with respect to prison conditions...the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...in tailoring any preliminary relief." 18 U.S.C. § 362(a)(2). The statute also explicates that any prospective relief should "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). The court, moreover, is required to make particular findings when it identifies a [Federal] violation. Benjamin v. Fraser, 343 F.3d 35, 56 (2d Cir. 2003); see also Handberry v. Thompson, 446 F.3d 335, 346 (2d Cir. 2006).

In the instant case, it does not appear that the plaintiff will suffer irreparable harm based upon the allegations in the complaint, and in any event, it does not appear likely that the plaintiff will succeed on the merits of his claims.  The Court notes that the motion for a preliminary injunction was filed almost five months after the March 28, 2007 incident in which the plaintiff's wrist was injured.  The record reflects that prior to the filing of the motion, and only three weeks after the injury, the plaintiff's wrist injury did not stop the plaintiff from participating in vigorous

exercise. (Docket No. 1, Statement of Facts, at ¶19; and Grievance Form II attached as page 16 of Docket No. 1). Although the plaintiff states in conclusory language that he should have been given different pain medication and a nerve conduction study, there is no medical basis in the record to support such claims. Based on the above, it is recommended that the plaintiff's motion for preliminary injunction be denied in its entirety.

**Conclusion**

Based on the above, it is recommended that the motion for a preliminary injunction be denied and that the motion to dismiss the complaint as against Aikin and Hohensee be granted.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir.

1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

                                                /s/ *Hugh B. Scott*
                                                 United States Magistrate Judge
                                                 Western District of New York

Buffalo, New York
February 27, 2008